## LINCOLN & AL vs. VISOSO.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. The plaintiffs claim the price of a case of silks, sold to the defendant. He admitted the sale, but denied the delivery. There was judgment against him, and he appealed.

Blanchard, the plaintiffs' clerk, deposed, that a few days after the purchase, the case being still in the plaintiffs' store, the defendant requested them to send it on board of the schr. Jane; they represented to him, he ought to do that himself; he said he was very busy, and they replied they would send it immediately. They accordingly, in his presence, directed the witness to carry it thither. The witness at once procured a dray, took the case to the custom house, where it was necessary to carry it, in order to procure a drawback, and afterwards brought it to the levee, opposite to the schooner, where he saw a man taking down the marks and numbers of several packages and boxes, and who said he was the mate of the schooner Jane. He told this man the case was intended to go by the schooner, but it was not to be taken on board, till inspected by the

If the vendor, after the sale, promises to send the thing on board of a vessel, and through the neglect of the person he employs, it be lost, the vendee may refuse the payment of the price.

East'n. District. officers of the customs. After this the witness
Feb. 1825. returned to the plaintiffs' store. It was about
Lincoln & al. one o'clock, P. M. when the witness left the
vs. store, and it was not much more than fifteen
Visoso. minutes after, when he deposited the box on
the levee. Towards four o'clock, he went to
see whether the case had been taken on board;
and seeing it still on the levee, he enquired
from the captain of the schooner, who said she
was already too full and he could not take it,
and he would be obliged to land some of the
goods he had taken in. The witness went se-
veral times from the schooner to the defen-
dant's store to seek him, but could not meet
with him. Towards six, the case being still on
the levee, the witness went again, and having
found the defendant, told him of the captain's
refusal to take the case. The defendant told
the witness he knew it, and shewed him seve-
ral boxes the captain had sent back. They
both walked to the levee, and on their arrival
there, the case, which the witness had seen a
few minutes before, was missing. On enqui-
ring on board of the schooner, and other ves-
sels near her, no account could be had of it.
This was on the 17th of March.

Cucullu deposed that on the afternoon of the

same day, the defendant came on board of the Jane, to enquire whether she could receive any more goods, and was answered she could not, as she was too full. This was between three and four o'clock. Goods are shipped at times by the sellers, at others by the purchasers, they are generally considered at the latter's risk, after the sale. A receipt of goods shipped, is taken from the master or mate. When they are to be inspected, in order to secure a drawback, they remain on the levee till after the inspection. The Jane sailed six days after.

The custom-house officer deposed, that about the 17th of March, he saw a case on the levee, which had been entered at the custom house for the drawback, he had his certificate to furnish. It lay opposite the levee. It is not customary to open boxes entitled to drawback. In the evening he told the captain of the Jane, the box was ready on the levee to be shipped, and he wished him to take it on board; he was answered, it could not be taken, as the schooner was too full. This was afterwards repeated to a young man, who made enquiry on board for the case.

Macarty, a witness for the defendant, deposed, the plaintiffs' clerk went several times

East'n. District.
Feb. 1825.

LINCOLN & AL.
vs.
VIGOSO.

to the defendant's store without finding him. Meeting him at length, he told him there was a case on the levee, which the captain of the Jane refused receiving, as she was too full. The defendant said he had done wrong in leaving it there. They both walked to the levee, and the defendant, on his return, informed the witness the case was lost.

Vidal, the defendant s clerk, proved that the plaintiffs' clerk came several times to look for the defendant, but declined to make his business known. Towards six o'clock he saw the defendant, and informed him of the captain's refusal to receive the case. On that the defendant and the plaintiffs' clerk went out to look for it.

The captain of the schooner, whose deposition was taken, with a reservation of all legal exceptions, deposed that the defendant came on board in the afternoon of the 17th of March, to enquire whether the schooner could take any more goods and was answered in the negative. About half an hour after, the plaintiffs' clerk came and told the witness there was a case on the levee, which he wished him to take, and was answered he could not; with a recommendation to ship it on board of the

Hamilton. At sun set, the plaintiff Lincoln came on board with the defendant, and told the witness the case was lost and the witness would have to pay for it. The witness replied he had not seen it, and perhaps it had been returned to the custom house. Lincoln and witness went in search of some of the officers, without success. The next day, Lincoln said the case was not at the custom house. When goods are brought to the witness for shipment, the drayman brings a ticket, on the back of which a receipt is given. When no ticket comes, a receipt is given. This is the general practice.

On his cross-examination, the witness said that on the morning of the 17th of March, a black man came to the levee, opposite the schooner with goods from the defendant, and applied on board, between nine and eleven o'clock, to have them received. The witness told him they could not, as the schooner was too full. He knew the goods were the defendant's from the ticket accompanying them. When the plaintiffs' clerk came on board, the custom house officer was on board, and had the permit or certificate for the case; he stated that it was on the levee, and that he had taken its

East'n. District.
*Feb.* 1825.

LINCOLN & AL.
*vs.*
VISOSO.

East'n. District. marks and numbers.   The officer had been
Feb. 1825, delivering goods from the Spanish brig Mari-
Lincoln & al. ana, on board of the schooner Jane, from two
vs.
Visoso. o'clock P. M. till after half past three, and con-
tinued on board of, or near the schooner, till
the plaintiffs' clerk came, and remained half
an hour after the clerk went away.   When the
defendant came on board, in the afternoon,
Cucullu was there; and it was about a half an
hour before the witness saw the plaintiff's
clerk.  When the witness receives goods,
which come with a ticket, he has a right to
take them on board at once.   He has never
taken goods entitled to drawback, unless they
were taken from the levee, after being inspect-
ed.   The defendant had shipped such goods,
but he procured the necessary permits, and the
witness took them from the levee.   At about
eight o'clock in the evening, the witness re-
ceived goods from the defendant, and gave re-
ceipts for them, as before stated.

The principal examination being resumed,
the witness said that the day before, he receiv-
ed some bars of iron of the defendant, and on
the preceding evening, several trunks and
packages, always giving receipts for the goods
received except when the mate gave such re-

ceipts. The Jane was the *fifth* vessel from the
levee; the schooner Hamilton & Hiram, the
brig Marriana, and two other vessels being be-
tween her and the levee. Lincoln told the
witness the clerk had reported, that the mate
of the Hamilton, being asked whether he was
that of Jane, had answered yes, and as such
had received the case.

There is no embarrassing question of law at-
tending this case: it rests on the single question
of fact, whether the plaintiff complied with the
engagement they had made to deliver the case
on board. They might have insisted on the
delivery of the case being made in their store;
but having agreed to the defendant's proposi-
tion, that they should put it on board; they must
answer for any negligence in doing so, that may
have occasioned its loss. If they did deliver the
box to the captain or mate, on the levee oppo-
site the schooner, and it was afterwards lost by
the neglect of the latter, the plaintiffs cannot
be responsible.

The evidence of the delivery rests on the
testimony of their clerk. He testifies he de-
livered the case to a man who *said* he was the
mate of the Jane. The witness did not
know the person: and if the box was lost after

this delivery, the defendant would find it very difficult to charge the master or owners of the vessel, with the loss. They would answer, the testimony does not establish that the person who received the box *was mate* of the Jane. It might be a perfect stranger, who had imposed on the credulity of the clerk. It is true, this man is represented as occupied on the levee, opposite to the Jane, in taking the marks and numbers of boxes and packages. But there were other vessels between the levee and the schooner Jane, and he might with equal probability be taken as belonging to any of them as the Jane. According to the plaintiffs' own testimony, captains or mates of vessels removing goods for shipment give receipts for what they receive, and the clerk acted carelessly, and out of the ordinary way of business, in thus delivering a case of valuable goods to a perfect stranger, on his assurance that he was the mate of the vessel for which the case was destined, without taking a receipt. The taking the receipt or securing the means of proving the delivery to the real *mate*, was an obligation resulting from that of delivering the case on board, as the signing a bill of lading, or other evidence of the shipment would have been an

obligation resulting from the engagement of
shipping the goods to a consignee aboard.

Neither is it clear that the deposit of the case near this man, was he proven to be the mate of the Jane, and informing him it was to be shipped in that vessel, but not to be taken on board till after an inspection had taken place, could well be considered as a delivery *on board.* It is true, as masters of vessels ordinarily receive the goods, on the margin of the water, to be taken on board, in their own boats, a delivery to them of goods which may be immediately taken away into a boat, is a delivery *on board;* the masters being bound by custom, or rather the marine or merchant law, to send their boats ashore to take goods for their vessel. But when goods cannot be at once taken away, nothing imposes on masters of vessels the duty of watching them, till an inspector comes to view them.

The hands sent in a boat to take goods from the shore, have authority to receive and bring such goods on board; and for their neglect and misconduct in the discharge of this duty, the masters and owners are responsible. They may receive goods to be thus taken away, but a contract to receive goods not to be at once

shipped, but to be watched and guarded on shore, till an officer is sent for and performs his duty, may be said to be one of a somewhat different nature than the one which necessarily results from the nature of their employ.

The case, however, was not lost before the officer came, and allowed it to be shipped. When this was announced to the captain of the Jane, he declared his inability to take the case on board, as his vessel was too full. This declaration was notice to the clerk that he was expected to take the case back. He was advised to ship it in another vessel. He could not expect the captain of the Jane would take it in, nor send or leave any one on the levee to guard it. To go in quest of the defendant several hours, while the case stood on the levee, aloof from any person bound to look to it, was unnecessarily to expose it to the risk of being taken away thro' error, or stolen. To have put it on a dray, to have been carried to the store of the plaintiffs', or of the defendant's, was a means of preventing the subsequent accident, which a man of ordinary care, would not have neglected.

It seems to us, the plaintiffs did not comply with their engagement to send the case on

board of the vessel, and that the case was lost through the want of ordinary care in their clerk.

This is a question of fact, which the judge *a quo* determined in another manner. On questions of this nature, the opinion of the first judge has much weight in this court. In the present, it appears to us, the obligations of the respective parties to the contract sued on, were mistaken in the district court. It was there held the duty of the defendant to have been on the levee to take care of the case. It seems to us, the defendant had stipulated the case should be *sent on board*—i. e. delivered to the hands of the schooner on the levee oposite to her, to be taken on board. It was not to be delivered *to him* on the levee, nor to any agent of his, except the captain of the schooner, or any of the hands duly authorised by the latter. He might well remain quiet and unconcerned, expecting the plaintiffs' clerk would not part with the case, till it was received by the man or some of his people, duly authorised to take it on board.

It is urged, the defendant knew in time the schooner was so full, that she could not receive any more goods. This might lead him to

conclude, the captain might refuse to take it; or having taken it, would send it back; but he could not conclude that, on its being refused room on board, the clerk would be so careless as to leave it alone on the levee, under the care of no one, exposed to be misplaced or stolen.

As our opinion differs from that of the first judge, we will leave the plaintiffs at liberty to establish their claim in another suit.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that there be a judgment of non-suit, with costs in both courts.

*Watts* & *Lobdel* for the plaintiffs, *Cuvillier* for the defendants.